## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Kelly A. Kelly
Deputy Pubic Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher Sutton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 14, 2016

Court of Appeals Case No.
01A05-1507-PC-882

Appeal from the Adams Circuit Court

The Honorable Chad E. Kukelhan, Judge

Trial Court Cause No.
01C01-1201-PC-1

**Robb, Judge.**

# Case Summary and Issue

Following a jury trial, Christopher Sutton was convicted of child molesting as a Class A felony. He subsequently filed a petition for post-conviction relief alleging ineffective assistance of counsel. During the course of post-conviction proceedings, Sutton served the State with four proposed Non-Party Requests for Production of Documents and Subpoenas Duces Tecum pursuant to Indiana Trial Rule 34(C). The requests were directed at four medical providers and sought the child victim's medical records. The State objected to the requests. The post-conviction court sustained the State's objection but certified the matter for interlocutory appeal. We accepted jurisdiction. Concluding the post-conviction court's ruling will not prejudice Sutton's ineffective assistance claim, we affirm the post-conviction court's order quashing Sutton's subpoenas.

# Facts and Procedural History

Many of the facts relevant to Sutton's conviction were recounted by this court on direct appeal:

> Seven-year-old Z.H. lived with her mother S.C, her three-year old brother, and thirty-two-year-old Sutton. S.C. and Sutton had lived together for "about 2, 2 years," and Z.H. called Sutton "daddy." On July 8, 2008, Z.H. and her brother were in bed with S.C. and Sutton. Z.H. had an issue with wetting herself at night and wore a pull-up diaper. S.C, who is a sound sleeper, did not hear Sutton leave the next morning.
>
> S.C. woke up around 7:00 a.m., and Z.H. was already awake.

Z.H. went into the bathroom and her mother told her to take off her clothes so that she could take a bath. Z.H. told S.C. that her vagina hurt. S.C. told Z.H. that she "probably peed [her] pants, um go ahead and take your clothes off you'll be fine," and Z.H. stated "no mom my vagina hurts because . . . daddy stuck his penis in my vagina."

Without talking to Z.H. about what had happened, S.C. called her mother. S.C.'s mother and sister arrived, and her sister called the police. Later that day, Danielle Goewert of the Fort Wayne Child Advocacy Center interviewed Z.H. and the interview was recorded. Z.H. informed Goewert that Sutton put his penis in her vagina the previous night. Z.H. stated that Sutton was asleep because his eyes were closed. Z.H. stated that Sutton's penis touched her pull-up diaper and that her pull-up diaper went into her vagina. Z.H. also stated that her brother once smacked her in her vagina.

After her interview, Z.H. was examined at the Fort Wayne Sexual Assault Treatment Center by Sharon Robinson, the chief administrative officer and a sexual assault nurse examiner. Robinson asked Z.H. what had happened to her, and Z.H. stated that her "daddy put his penis inside [her] vagina and that he pushed [her] pull up inside with his penis . . . ." Robinson observed Z.H.'s "internal female sex organ" and "her labia minera," which she described as ["]really dark red . . . ." Robinson also observed petechiae, which is "pin point bruising," on Z.H.'s labia minera and above her urethra.

When Sutton arrived home, Berne Police Detective James Newbold identified himself to Sutton and asked him if he would come to the police department with him. Sutton said that he would and asked if he was going to jail. During the interview, Detective Newbold told Sutton that the interview related to the fact that Z.H. had told her mother that her vagina hurt. Sutton stated that Z.H. had complained about her vagina hurting for probably the last year. Detective Newbold asked Sutton if there

was a particular reason why Z.H.'s vagina would be hurting, and Sutton stated that over the weekend Z.H. complained that she had been hurt on the "swings or something," but Z.H.'s aunt checked her and determined that she was only scratched. Sutton denied placing his penis in Z.H.'s vagina. When asked why Z.H. would say that he had placed his penis in her vagina, Sutton stated that he is erect in the mornings and that he must roll over Z.H. to exit the bed but that his penis did not touch her. Sutton also indicated that he attempts to be sure that he is "clear" of the children and is "careful" because he knows the children are usually in the bed.

* * *

On July 14, 2008, the State charged Sutton with child molesting as a class A felony. On December 29, 2008, the State filed a notice of intent to introduce Z.H.'s statement at trial pursuant to Ind. Code § 35-37-4-6, the Protected Persons Statute, and later filed amended notices. On January 5, 2009, the State filed an amended information for child molesting as a class A felony. On June 16, 2009, the court held a protected person hearing on the State's motion, which Sutton attended. Sutton's counsel questioned Z.H. Barbara Gelder, a psychologist at the Center for Neuro-Behavioral Services, testified that she had previously met Z.H., reviewed her medical file, and believed that Z.H. would suffer harm by testifying. On June 23, 2009, the court entered an order concluding that Z.H. was a protected person, was unavailable to testify at the trial, and was made available for and was cross-examined by defense counsel during the protected person hearing.

*Sutton v. State*, No. 01A05-1002-CR-75, 2010 WL 5386318, at *1-2 (Ind. Ct. App. Dec. 21, 2010) (citations omitted), *trans. denied*. At trial, the State offered into evidence a recording of Z.H.'s interview at the Child Advocacy Center, as well as Z.H.'s testimony from the protected person hearing. Both exhibits were

admitted and played for the jury. S.C. testified that "Z.H. stated that her vagina hurt because Sutton 'stuck his penis in [her] vagina.'" *Id.* at *2. Sutton also testified and denied touching Z.H. in a sexual manner.

[3] The jury found Sutton guilty of child molesting as a Class A felony, and the trial court sentenced Sutton to forty-five years in the Department of Correction, with five years suspended. Sutton appealed his conviction, arguing the trial court erred in admitting Z.H.'s out-of-court statements and portions of Sutton's interview with Detective Newbold. Finding no reversible error, we affirmed Sutton's conviction, and our supreme court denied his petition to transfer. Sutton subsequently filed a petition for post-conviction relief alleging ineffective assistance of counsel. Relevant here, Sutton contends in his petition,

> [T]rial counsel failed to conduct an adequate pre-trial investigation and therefore failed to discover and present . . . medical evidence (including evidence of a playground incident the day before the date when Sutton was alleged to have molested Z.H.) that could have been used to show that the physical injuries and emotional impairment of Z.H. were not caused by Sutton . . . .

Appendix to Brief of Petitioner-Appellant at 14.

[4] On December 11, 2014, Sutton served the State with four proposed Non-Party Requests for Production of Documents and Subpoenas Duces Tecum pursuant to Indiana Trial Rule 34(C). The requests were directed at four different medical providers and sought "[a]ll medical records" or "[a]ll medical records and/or counseling records" for Z.H. dated through July 2008. *Id.* at 57-74.

The State filed an objection to the requests on December 16, 2014. The State maintained Sutton was "not entitled to a second opportunity to discover the same evidence that he could have discovered prior to trial" and further objected because Sutton failed to state "why all of the victim's medical and counseling records from the victim's birth through July 2008 are relevant or necessary." *Id.* at 49-50. Sutton filed a response to the State's objection, arguing the victim's medical records are discoverable under Indiana Trial Rule 26 and relevant to his petition for post-conviction relief because trial counsel should have reviewed such records in order to rule out alternative explanations for the victim's injuries:

> Counsel has consulted with Dr. Steven R. Guertin, MD, at Sparrow Children's Center in Lansing, Michigan about Sutton's case. After a review of case materials, Dr. Guertin opined that the medical condition of the victim could have resulted from something other than an incident of molestation. Specifically, the scattered petechiae and redness/swelling could have been caused by aggressive masturbation, straddle injury, streptococcal disease and/or lichen sclerosis et atrophicus.

*Id.* at 53.[1]

[5] At a hearing held on February 6, 2015, the State argued the issue was already litigated at trial because the nurse who conducted Z.H.'s sexual assault

---

[1] Lichen sclerosis et atrophicus is a chronic skin disease characterized by the eruption of flat white hardened papules. Merriam-Webster Online Medical Dictionary, http://www.merriam-webster.com/medical/lichen%20sclerosus%20et%20atrophicus (last visited Mar. 3, 2016).

examination testified "the only cause" of Z.H.'s injuries was "[p]enetrati[on] inside her female sex organ." Transcript of Trial at 353. The nurse found Z.H.'s injuries to be consistent with Z.H.'s account of the molestation and explained to the jury why she believed the injuries were caused by penetration as opposed to external blunt force trauma or diaper rash. The nurse also testified that she obtained Z.H.'s medical history prior to conducting the examination: "prior hospitalizations, any medicines that she currently [was] on, any medical conditions that she has." *Id.* at 341. The nurse completed a medical history form, which lists attention deficit hyperactivity disorder and epilepsy as Z.H.'s previous medical history, but she did not offer specific details about Z.H.'s medical conditions when she testified at trial.

[6] Sutton, by counsel, argued Dr. Guertin would be unable to form an opinion without additional information about the victim's medical history, but Sutton conceded he did not know the extent to which such records were previously discovered. Post-conviction counsel could not locate Sutton's file, and trial counsel could not remember the specifics of the case. Post-conviction counsel was consulting the State's file, which contained some medical records but none that referenced the victim's "official diagnosis." Transcript of Hearing at 5.

[7] Following the hearing, the post-conviction court issued an order sustaining the State's objection. Sutton filed a motion to certify the matter for interlocutory appeal pursuant to Indiana Appellate Rule 14(B). The post-conviction court certified its order quashing Sutton's subpoenas on June 19, 2015, and we accepted jurisdiction over the appeal on August 7, 2015.

# Discussion and Decision

## A. Standard of Review

[8] "Post-conviction proceedings are civil proceedings in which the defendant must establish his claims by a preponderance of the evidence." *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013). The proceedings are "governed by the same rules 'applicable in civil proceedings including pre-trial and discovery procedures.'" *Id.* at 1251 (quoting Ind. Post-Conviction Rule 1(5)). Post-conviction courts are given broad discretion in ruling on discovery matters, however, and we affirm their determinations absent a showing of clear error and resulting prejudice. *Id.*

[9] Sutton's petition for post-conviction relief alleges he received ineffective assistance of trial counsel. To establish a claim of ineffective assistance of counsel, a defendant must demonstrate (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance was deficient if it fell below an objective standard of reasonableness based on prevailing professional norms. *Id.* at 688. Likewise, a defendant is prejudiced by counsel's deficient performance only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## B. Z.H.'s Medical Records

[10] Sutton contends he may have a viable claim for ineffective assistance of counsel because trial counsel *possibly* failed to investigate Z.H.'s medical history. Sutton argues he is now entitled to discover Z.H.'s medical records because the records *may* contain information that *could* provide an alternative explanation for Z.H.'s injuries. In the event the victim's records did contain this sort of information, Sutton argues trial counsel *would* have presented the information to the jury had he known of the records, which *could* have resulted in Sutton's acquittal.

[11] Under the particular facts and circumstances presented here, we cannot say the post-conviction court's ruling will result in prejudice to Sutton's ineffective assistance claim. *See Wilkes*, 984 N.E.2d at 1251. Even assuming Z.H.'s medical records contain information that could provide an alternative explanation for Z.H.'s injuries, this evidence would not show counsel failed to adequately investigate, nor would it establish a reasonable probability that the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. As explained above, post-conviction counsel could not locate Sutton's file, and trial counsel could not remember the specifics of Sutton's case. And in light of the testimony of the sexual assault nurse, who ruled out alternative explanations, as well as Z.H.'s disclosure of the abuse, we cannot say an alternative medical explanation would undermine our confidence in the outcome of Sutton's trial.

Absent clear error and resulting prejudice, we do not disturb a post-conviction court's discovery rulings. *Wilkes*, 984 N.E.2d at 1251. We see no resulting prejudice here and accordingly must affirm the post-conviction court's order quashing Sutton's subpoenas.

# Conclusion

The post-conviction court's ruling will not prejudice Sutton's ineffective assistance claim because evidence supporting an alternative medical explanation for Z.H.'s injuries would demonstrate neither deficient performance, nor prejudice to the defense sufficient to undermine confidence in the outcome of Sutton's trial. We therefore affirm the post-conviction court's order quashing Sutton's subpoenas.

Affirmed.

Barnes, J., and Altice, J., concur.